**Timothy McCRARY, Plaintiff,**

v.

**EL PASO ENERGY HOLDINGS, INC., a/k/a Tennessee Gas Pipeline, Defendant.**

No. 1:00CV116–D–D.

United States District Court, N.D. Mississippi, Eastern Division.

July 18, 2002.

Fraser A. McAlpine, Littler Mendelson, Houston, TX, Mark R. Smith, Holcomb Dunbar, Oxford, MS, for defendant.

Jim D. Waide, III, Waide & Associates, PA, Tupelo, MS, for plaintiff.

*OPINION GRANTING MOTION FOR JUDGMENT AS A MATTER OF LAW*

DAVIDSON, Chief Judge.

Presently before the court is the Defendant's motion for judgment as a matter of law, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Upon due con-

sideration, the court finds that the motion should be granted.

*A. Factual and Procedural Background*

On July 15, 2002, this case came before the court for jury trial. At the conclusion of the Plaintiff's case, the Defendant moved for judgment as a matter of law, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. After viewing all the evidence presented in the light most favorable to the Plaintiff and drawing all reasonable inferences in the Plaintiff's favor, the court finds that there is no legally sufficient evidentiary basis for a reasonable jury to find in favor of the Plaintiff. As such, the court shall grant the Defendant's motion.

In this diversity action, the Plaintiff asserts a cause of action against the Defendant for breach of an employment contract. Specifically, the Plaintiff claims that the Defendant violated the terms of an "El Paso Energy—D.O.T. Employee Handbook on Drug Abuse and Alcohol Misuse" in terminating the Plaintiff's employment as a maintenance operations technician after the Plaintiff failed a random drug test. In support of his claim, the Plaintiff asserts that, pursuant to the Mississippi Supreme Court's decision in *Bobbitt v. The Orchard, Ltd.,* 603 So.2d 356 (Miss.1992), the handbook created an obligation on the part of the Defendant to follow its provisions in administering the drug testing program; and the Defendant violated several of the handbook's provisions in terminating the Plaintiff.

The underlying facts surrounding the Plaintiff's employment and termination are largely undisputed. On July 21, 1997, the Plaintiff filed an "Application for Employment" with the Defendant. The Application contained the following disclaimer, in all capital letters and bold type:

**I AGREE THAT IF HIRED, MY EMPLOYMENT WILL BE AT THE WILL OF EITHER THE COMPANY OR ME AND MAY BE TERMINATED, WITH OR WITHOUT CAUSE AND WITH OR WITHOUT NOTICE, BY EITHER THE COMPANY OR ME . . . .**

The Plaintiff signed the application, and was hired by the Defendant shortly thereafter as a maintenance operations technician at the Defendant's Columbus, Mississippi, location.

The United States Department of Transportation (DOT) has promulgated regulations governing natural gas pipeline transmissions, and many of the Defendant's employees occupy "safety-sensitive" positions that require the employees to participate in the DOT's drug testing program, including being subject to random drug tests. As a maintenance operations technician, the Plaintiff held such a position, and thus was subject to the DOT's drug testing requirements. As part of the DOT program, the Defendant was required to implement and maintain a DOT drug testing policy, and ensure that its safety-sensitive employees met DOT drug testing standards.

In order to implement its DOT drug testing policy, the Defendant contracted with Substance Abuse Management, Inc. (SAMI), a DOT certified entity. SAMI's role was to administer and manage the Defendant's drug testing program, and ensure that drug testing of the Defendant's employees was conducted pursuant to DOT regulations. SAMI in turn contracted with Family Medical Center of Columbus, Mississippi, to collect the Defendant's employee's urine specimens and have those specimens tested for the presence of illegal substances by an independent, DOT-approved laboratory.

One aspect of the DOT drug testing program involves random testing of employees. On October 18, 1999, the Plaintiff was selected for a random drug screen.

The Plaintiff proceeded to the Family Medical Center and provided a urine specimen as directed. The Plaintiff's specimen subsequently tested positive for marijuana. After notifying the Plaintiff of the positive result, the Defendant followed the applicable DOT regulations and terminated the Plaintiff's employment. This suit followed.

### B. Standard for Judgment as a Matter of Law

Rule 50(a)(1) of the Federal Rules of Civil Procedure sets forth the standard for granting judgment as a matter of law:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1).

In applying this standard, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all reasonable factual inferences in that party's favor, and leaving credibility determinations and the weighing of evidence to the jury. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–50, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000); *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.2000). The court should grant a motion for judgment as a matter of law only when "the facts and inferences point so strongly and overwhelmingly in favor of [the moving] party that the court believes that reasonable [jurors] could not arrive at a contrary verdict." *Boeing Co.*, 411 F.2d at 374.

### C. Discussion

To determine whether entry of judgment as a matter of law against the Plaintiff is appropriate, the court must ascertain if sufficient evidence exists for a reasonable jury to find in favor of the Plaintiff on his breach of contract claim.

1. Mississippi's *Bobbitt* Exception to the Employment At–Will Doctrine

Mississippi has followed the employment at-will doctrine since 1858. *Coleman v. Mississippi Employment Sec. Comm'n*, 662 So.2d 626, 628 (Miss.1995). Where there is either no employment contract or the contract fails to specify the length of the worker's employment, either party may terminate the employment at will. *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088 (Miss.1987). This means that the employee is entitled to quit or the employer is entitled to terminate the employee for a good reason, a wrong reason, or no reason at all. *Slatery v. Northeast Mississippi Contract Procurement, Inc.*, 747 So.2d 257, 259 (Miss.1999).

The Mississippi Supreme Court has, however, carved out two narrow exceptions to the employment at-will doctrine, thereby allowing an at–will employee to sue for wrongful discharge. First, where an employee is terminated because he or she has refused to participate in illegal activity or has reported the illegal activity of his employer to the employer or to anyone else, a suit for wrongful discharge can be brought, despite the at-will status of the employee. *McArn v. Allied Bruce–Terminix Co.*, 626 So.2d 603, 607 (Miss.1993); *Laws v. Aetna Finance Co.*, 667 F.Supp. 342 (N.D.Miss.1987). Second, when an employer furnishes its employees a handbook or manual that sets forth procedures to be followed in reprimanding, suspending, or discharging its employees, then the employer is obligated to follow its own provisions, even in the absence of a formal

employment contract. *Bobbitt v. The Orchard, Ltd.*, 603 So.2d 356 (Miss.1992); *Slatery*, 747 So.2d at 259 (Miss.1999). This *Bobbitt* exception to the at-will employment doctrine is qualified, however, by the principle that an employer may avoid creating a contract of employment by having its employees sign a disclaimer stating that the employees' continued employment at the firm remains at-will. *See Byrd v. Imperial Palace of Mississippi*, 807 So.2d 433, 436–37 (Miss.2001) ("holding that when there is a disclaimer which expressly provides that the employment relationship is at-will, the handbook in question does not create a contractual obligation that overrides the at-will doctrine."); *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So.2d 845, 848 (Miss.2001) (same). In fact, the *Bobbitt* court itself hinted at such an exception to the rule it created by finding the lack of

> a disclaimer in the subject handbook pivotal: Had there been in [previous cases where the court upheld the employment at-will doctrine] an employee's manual purporting to give the employees the same protection as in this case, *and there had been, again as in this case, no express disclaimer or contractual provision that the manual did not effect the employer's right to terminate the employee at-will,* without question we would have required the employer in both cases to abide by its own manual.

*Bobbitt*, 603 So.2d at 361 (emphasis supplied). In *Bobbitt*, there was no disclaimer whatsoever stating that the employee's employment was at-will.

Here, the court finds that two separate disclaimers signed by the Plaintiff render him unable to establish a claim under the *Bobbitt* exception to the employment at-will doctrine. First, the Plaintiff signed the disclaimer that appeared on his employment application. Second, three days after signing his employment application, the Plaintiff signed a Certificate of Compli-

ance, acknowledging that he received a copy of the Defendant's Code of Conduct, and indicating his intent to comply with that Code. The Code of Conduct is a 13 page manual that clearly states that "absent a specific, written contract to the contrary, employment with the Company is at will."

The Plaintiff argues, however, that a manual entitled "DOT Employee Handbook on Drug Abuse and Alcohol Abuse," upon which the Defendant's logo appears, falls within the *Bobbitt* exception. The court disagrees. The Plaintiff signed two separate disclaimers, both of which clearly indicated that the parties' relationship was at-will. The Mississippi Supreme Court, in the *Bobbitt* opinion itself as well as in cases construing *Bobbitt*, has clearly held that such disclaimers are sufficient to maintain the parties' at-will relationship, despite the fact that the employer distributes handbooks or manuals to its employees. *Bobbitt*, 603 So.2d at 361; *Byrd*, 807 So.2d at 436–37; *Lee*, 797 So.2d at 848. In addition, two federal appellate courts have held that state law claims of this type are incompatible with the employment at-will doctrine. *Carroll v. Federal Express Corp.*, 113 F.3d 163 (9th Cir.1997); *Graham v. Contract Transp., Inc.*, 220 F.3d 910 (8th Cir.2000). As such, the court finds that the Defendant is entitled to judgment as a matter of law on the Plaintiff's claims.

### 2. Conclusion

In sum, while this court was the first to recognize an exception to Mississippi's employment at-will doctrine, in *Laws v. Aetna Finance Co.*, 667 F.Supp. 342 (N.D.Miss. 1987), the court declines to expand the Mississippi Supreme Court's pronouncements in *Bobbitt* as requested by the Plaintiff. The Plaintiff signed two separate and plainly worded disclaimers indicating that his employment with the De-

fendant was at-will and terminable at any time. The Mississippi Supreme Court has repeatedly held, as noted above, that such disclaimers are sufficient to maintain the parties' at-will relationship. The court finds, therefore, that the Defendant's motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure should be granted.

A separate judgment and order in accordance with this opinion shall issue this day.